1
2
3
4
5
6
7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DONALD JEROME GREEN,

11              Plaintiff,              No. CIV S-06-2107 FCD GGH P

12        vs.

13   SHARP,                            ORDER AND

14              Defendant.             FINDINGS & RECOMMENDATIONS

15   _____/

16   INTRODUCTION

17              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18   42 U.S.C. § 1983.  Plaintiff alleges that defendant Sharp violated his Eighth Amendment rights

19   by failing to protect him from harm by another inmate.

20              Pending before the court is defendant Sharp's summary judgment motion filed

21   January 4, 2008.  After carefully considering the record, the court recommends that defendant

22   Sharp's motion be granted.

23              On March 14, 2008, plaintiff filed a response to defendant's reply to his

24   opposition to the summary judgment motion.  On March 21, 2008, defendant filed a motion to

25   strike plaintiff's response as procedurally improper.  Defendant is correct that the Federal Rules

26   \\\\\

                                            1

of Civil Procedure do not provide for a response to a reply.  Accordingly, the motion to strike is

granted.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

always bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the
pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any," which it believes
demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

should be granted, "so long as whatever is before the district court demonstrates that the standard

for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

2553.

If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

(1986).  In attempting to establish the existence of this factual dispute, the opposing party may

not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

3

1   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2   'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

3           On December 22, 2006, the court advised plaintiff of the requirements for

4   opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v.

5   Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409,

6   411-12 (9th Cir. 1988).

7   UNDISPUTED FACTS

8           On August 15, 2005, a stabbing assault occurred on C-Facility Main Yard at the

9   California State Prison-Sacramento involving inmates in the disruptive groups Hoover Crips and

10  Neighborhood Crips.  As a result, all inmates identified and/or designated as suspected associates

11  of the disruptive group Crips and those inmates celled with them were placed on lockdown status

12  until further notice.

13          As a result of this incident, C-Facility Captain Hill issued a number of directives

14  governing daily operations within C-Facility, including procedures for escorting inmates on

15  lockdown.  On August 22, 2005, Captain Hill issued a revised memorandum governing C-

16  Facility operations, until further notice.  According to the August 22, 2005, memorandum,

17  inmates identified and/or designated as suspected associates of disruptive group Hoover Crips

18  and those inmates celled with them were instructed to be escorted unrestrained within the

19  Facility.  In addition, Crip and Blood associates were not to be escorted together.

20          At that time, plaintiff was a member of the Hoover Crips.

21          On September 30, 2005, plaintiff was escorted to the C-Facility Clinic for a dental

22  appointment.  Upon arrival, defendant Sharp placed plaintiff in a holding cell.

23          A few minutes later, defendant Sharp escorted plaintiff through the Clinic hallway

24  doorway.  Defendant Sharp did not call out "escort" as he entered the Clinic with plaintiff.  The

25  regulations requiring officers to call out "escort" apply only to situations when the inmate being

26  escorted is wearing restraints, which plaintiff was not.

1    Plaintiff was unrestrained during this escort.  Unbeknownst to defendant Sharp,

2  inmate Frazier entered the Clinic from a separate area of the Clinic.  As plaintiff followed

3  defendant into the Clinic, they passed inmate Frazier.  As plaintiff passed inmate Frazier, inmate

4  Frazier attacked plaintiff without any provocation.  Plaintiff suffered physical injuries as a result

5  of the attack.

6    Defendant Sharp did not recognize inmate Frazier nor had any knowledge of his

7  affiliation with any gang or disruptive group.

8  DISPUTED FACTS

9    Whether defendant Sharp walked into the clinic and checked to make sure it was

10  safe after placing plaintiff in the holding cage is disputed.  In his declaration, defendant Sharp

11  states that after placing plaintiff into the holding cell, he checked the clinic area to ensure it was

12  clear.  Sharp declaration, ¶ 6.

13    In his opposition, plaintiff disputes defendant's claim that he checked the clinic by

14  citing paragraph 10 of his verified complaint which states, in relevant part,  "[p]rior to, and

15  during defendant Sharp's escort of the plaintiff to the Facility C Medical Clinic at no time did he

16  announce that an escort was underway or otherwise seek any clearance before moving plaintiff."

17  Complaint, ¶ 10.[1]  The court does not find that this statement addresses defendant's statement

18  that he checked the clinic before escorting plaintiff.  Rather, plaintiff is referring to the claim

19  made in the complaint that defendant Sharp failed to call out "escort" as he brought plaintiff into

20  the clinic as required by institutional regulations.

21    However, at his deposition, plaintiff testified that defendant Sharp sat at a desk

22  while plaintiff waited in the holding cell:

23    Q: Were you placed in a holding cage upon arriving at the clinic area?

24

25    [1] A plaintiff's verified complaint may be considered as an affidavit in opposition to
summary judgment if it is based on personal knowledge and sets forth specific facts admissible in
26  evidence.  Lopez v. Smith, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000).

1    A: Yes.  As soon as Sharp took responsibility of the escort, he opened the gate.  I
     proceeded through the gate.  When I was walking through the gate, he was talking
2    to fellow employees about some sodas or something like that, and I kind of like
     stood right there on the side waiting on him to finish his conversation to lock me
3    up in the cage.  Once he finished, he walked me to the cage and put me in the
     cages.
4
     Q: And how long were you in the holding cage?
5
     A: Roughly about five to ten minutes.  It wasn't long.
6
     Q: And did you have visual of Officer Sharp during these five to ten minutes?
7
     A: Yes.
8
     Q: Did you see what he was doing at that time?
9
10   A: Well, he was sitting right at the front of the desk right in front of the workers,
     the medical office, because when you walk–let me demonstrate for you...

11   Defense Counsel Declaration filed January 4, 2008, exhibit 3, pp. 21-22.

12        Based on plaintiff's deposition transcript, the court finds that whether or not

13   defendant Sharp checked the clinic himself before escorting plaintiff in is a materially disputed

14   fact.

15   DISCUSSION

16        "[P]rison officials have a duty...to protect prisoners from violence at the hands of

17   other prisoners."  Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)(internal quotations

18   omitted).  "The failure of prison officials to protect inmates from attacks by other inmates may

19   rise to the level of an Eighth Amendment violation when: 1) the deprivation alleged is

20   'objectively, sufficiently serious' and 2) the prison officials had a 'sufficiently culpable state of

21   mind,' acting with deliberate indifference."  Id.

22        "'[D]eliberate indifference entails something more than mere negligence...[but] is

23   satisfied by something less than acts or omissions for the very purpose of causing harm or with

24   knowledge that harm will result.'"  Id.  "Deliberate indifference occurs if the prison officials

25   knew that the inmate faced a substantial risk of serious harm and disregarded that risk by failing

26   to take reasonable measure to abate it."  Id. at 1042.  Prison officials who know of a substantial

1  risk to an inmates's safety "may be found free from liability if they responded reasonably to the

2  risk, even if the harm ultimately was not averted."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 844, 114

3  S.Ct. 1970 (1994).

4            Defendant moves for summary judgment on grounds that plaintiff admitted at his

5  deposition that defendant acted merely negligently.  Attached as exhibit 3 to defense counsel's

6  declaration filed January 4, 2008, are pages 21-33 and 43-44 of plaintiff's deposition transcript.

7  At page 43-44 plaintiff testified that defendant Sharp acted negligently when he failed to "call an

8  escort."

9            As discussed in the undisputed facts section above, defendant Sharp was not

10  required by institutional regulations to call out "escort" as he took plaintiff into the Clinic.  Based

11  on these facts, the court would agree that defendant's failure to call out "escort" did not amount

12  to deliberate indifference.  However, the court does not find that plaintiff's testimony that

13  defendant acted negligently by failing to call out "escort" conceded his entire constitutional

14  claim.  For the reasons discussed below, the court finds that defendant did not act with deliberate

15  indifference.

16            Defendant moves for summary judgment on grounds that he did not act with

17  deliberate indifference.  Defendant argues that he checked the clinic before escorting plaintiff

18  into it.  Defendant Sharp did not know that inmate Frazier had entered the clinic from a separate

19  area.  Defendant Sharp also had no indication or warning that inmate Frazier would attack

20  plaintiff.  Defendant did not recognize inmate Frazier or have any knowledge of his affiliation

21  with any gang or disruptive unit.

22            Whether defendant Sharp checked the clinic before bringing plaintiff into it is

23  disputed.  However, assuming that defendant Sharp failed to check the clinic, the court does not

24  find that he acted with deliberate indifference.  There is no evidence that defendant Sharp knew

25  that plaintiff faced a risk of serious harm from inmate Frazier.  It is undisputed that defendant

26  Sharp did not recognize inmate Frazier or have knowledge of his affiliation with any gang or

1  disruptive group.  Plaintiff does not claim that he, plaintiff, knew inmate Frazier and alerted

2  defendant Sharp to any safety concerns.  For these reasons, the court recommends that defendant

3  Sharp be granted summary judgment.

4          In his complaint, plaintiff also claims that after the incident defendant Sharp

5  stated to him,

6          You all are just gang bangers, homies just hitting homies, if he didn't get you
        today, he was going to get your ass later.  That's all you gang bangers do is fuck

7          each other up.  So don't blame me gangster it goes with the territory.

8  Complaint, p. 4.

9          In the reply to plaintiff's opposition, defendant argues that plaintiff's claim that

10 defendant Sharp made this statement lacks veracity and is self-serving.

11         Even assuming defendant Sharp made this statement, it is not evidence that

12 defendant knew that inmate Frazier was a threat to plaintiff.  Nor does this statement demonstrate

13 any intention by defendant to intentionally put plaintiff in harms way.  It is simply a strong

14 expression of frustration that the prison gang mentality has its risks.  If a prisoner makes it more

15 difficult for the prison to provide security by engaging in unlawful activities, the Eighth

16 Amendment does not require the prison to *ensure* that consequences from such illegal activity

17 never redound to the prisoner's detriment.  Accordingly, evidence of this statement does not

18 change the recommendation that defendant be granted summary judgment.

19         Defendant also moves for summary judgment on grounds that he is entitled to

20 qualified immunity.  Qualified immunity protects government officials acting in their official

21 capacities from civil liability unless their conduct violates "clearly established" statutory or

22 constitutional rights of which a "reasonable" official would have known.  Harlow v. Fitzgerald,

23 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

24         In Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001), the Supreme Court

25 imposed a specific analysis for determining whether qualified immunity is warranted.  The court

26 first considers whether the facts alleged, taken in the light most favorable to plaintiff, show that

1   the officer's conduct violated a constitutional right.  533 U.S. at 201.  If the court finds no

2   violation occurred, "[t]he inquiry ends," and "the plaintiff cannot prevail." Motley v. Parks, 432

3   F.3d 1072, 1077 (9th Cir. 2005)(en banc).  If the facts alleged demonstrate a constitutional

4   violation, the court will then consider whether the right in question was "clearly established"

5   such that a reasonable officer would know that "his conduct was unlawful in the situation he

6   confronted." Saucier, 533 U.S. at 202, 121 S.Ct. 2151.

7           Because the facts taken in the light most favorable to plaintiff demonstrate that

8   defendant Sharp did not violate plaintiff's constitutional rights, the qualified immunity analysis

9   ends.

10          Finally, because the court recommends that defendant be granted summary

11  judgment as to the federal claims, it declines to exercise jurisdiction over the pendant state law

12  claims.  28 U.S.C. § 1367(c).

13          Accordingly, IT IS HEREBY ORDERED that defendant's March 21, 2008,

14  motion to strike is granted.

15          Accordingly, IT IS HEREBY RECOMMENDED that defendant's January 4,

16  2008, summary judgment motion be granted.

17          These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

19  days after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22  shall be served and filed within ten days after service of the objections.  The parties are advised

23  \\\\\

24  \\\\\

25  \\\\\

26  \\\\\

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: 05/05/08

4                                                                      /s/ Gregory G. Hollows

5                                                                      _____
                                                                       UNITED STATES MAGISTRATE JUDGE

6

7

8  green.sj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26